THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent,
 
 
 

v.

 
 
 
Alvin William Sumpter,       
Appellant.
 
 
 

Appeal From Orangeburg County
James C. Williams, Jr., Circuit Court 
 Judge

Unpublished Opinion No. 2003-UP- 545
Submitted July 15, 2003  Filed September 
 25, 2003   

AFFIRMED

 
 
 
Senior Assistant Appellate Defender Wanda H. Haile, of Columbia, for Appellant
Attorney General Henry Dargan McMaster; Chief Deputy Attorney General John 
 W. McIntosh;  Assistant Deputy Attorney General Charles H. Richardson, of Columbia, 
 Walter M. Bailey, Jr., of Summerville, for Respondent(s).
 
 
 

PER CURIAM:  Alvin William Sumpter was indicted 
 for attempted armed robbery.  He was convicted and sentenced to twenty years 
 imprisonment. Sumpter appeals, arguing the trial judge erred in denying his 
 motion for a directed verdict where there was no evidence of intent to commit 
 attempted armed robbery.  We affirm.
FACTUAL/PROCEDURAL HISTORY
Catherine E. Winningham worked for Home 
 Insurance Agency.  Her office was divided into two distinct offices:  one room 
 with a waist-high counter where she handled insurance matters and a separate 
 room where Western Union exchanges were handled.   At around 4:00 p.m. on the 
 afternoon of September 24, 2001, a tall black male and a short black male walked 
 into the insurance agency.  The tall male stood by the front door while the 
 short male approached the counter and asked Winningham for a quote on insurance.   
 Winningham walked to her computer to get a quote, and she turned around to ask 
 the short male some information.  At that point, the short male jumped over 
 the counter and pointed a gun in Winninghams face.  Winningham began to scream, 
 ignoring the short males orders to be quiet and get on the floor.  Her screams 
 alerted Mary Jane Goodine in the parking lot, and the two males fled the building 
 without taking anything.   Nearby police officers witnessed the two men running 
 from the office and a chase ensued.  Sumpter, who had a gun, and John Henry 
 Chancy were arrested a short time thereafter.   The next day, Winningham identified 
 Sumpter as the short male and Chancy as the tall male from a photo lineup.   

Winningham testified at trial that she 
 observed the short male wearing a blue shirt and dark jeans and the tall male 
 wearing jeans and a light gray sweatshirt.   Winningham testified that after 
 the short male jumped over the counter, she knew that the man did not want a 
 quote and she was going to be robbed.  She stated that cash was not kept in 
 the insurance office because there was a separate room where it was kept.  When 
 asked whether the gunman ever asked her for cash or her purse, Winningham stated: 
 He couldnt get me to stop screaming enough, I dont think, to ask me anything.   

Mary Jane Goodine testified that as 
 she was leaving the insurance agency, she passed the two males entering.  She 
 stated she was standing in the parking lot when she heard Winningham start to 
 scream.   Goodine screamed robbery, robbery, robbery, to get the attention 
 of the nearby police officer directing traffic before she approached the insurance 
 office.  The two men bumped into Goodine as they ran out of the insurance agency.  
 Goodine described the two men to police as a short male wearing a blue jogging 
 jacket or shirt and a taller male wearing a dark gray sweatshirt.  In court, 
 Goodine identified Sumpter as the short male.     
After the presentation of the States case, 
 Sumpter moved for a directed verdict, arguing there was no evidence of intent 
 to commit a robbery because there was no request for money. The trial judge 
 denied the motion, finding there was substantial circumstantial evidence that 
 Sumpters intent was to commit a robbery.  Sumpter renewed his motion after 
 testifying and presenting the testimony of two alibi witnesses.   The trial 
 judge again denied the motion.   Sumpter was convicted of the charge and he 
 appeals.   
ISSUE
Whether the trial court erred in denying Sumpters 
 motion for a directed verdict on the charge of attempted armed robbery because 
 there was no proof of any attempt to take goods from the victim? 
DISCUSSION
Sumpter argues the 
 trial court erred in failing to grant his motion for a directed verdict because 
 there was no evidence that the gunman intended to take money or goods or that 
 there was any money or goods to take in order to commit a robbery.  
On appeal from the denial of a directed 
 verdict, an appellate court must view the evidence in the light most favorable 
 to the State.  State v. Lollis, 343 S.C. 580, 583, 541 S.E.2d 254, 256 
 (2001); State v. Burdette, 335 S.C. 34, 46, 515 S.E.2d 525, 531 (1999); 
 State v. Kelsey, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998).  When ruling 
 on a motion for a directed verdict, the trial court is concerned with the existence 
 of evidence, not its weight.  Burdette, 335 S.C. at 46, 515 S.E.2d at 
 531; State v. Wakefield, 323 S.C. 189, 196, 473 S.E.2d 831, 835 (Ct. 
 App. 1996).  If there is any direct or any substantial circumstantial evidence 
 reasonably tending to prove the guilt of the accused, an appellate court must 
 find the case was properly submitted to the jury.  Lollis, 343 S.C. 
 at 584, 541 S.E.2d at 256.  Conversely, a trial court should grant a motion 
 for a directed verdict when the evidence merely raises a suspicion the accused 
 is guilty.  Id.  
Robbery is defined as the felonious 
 or unlawful taking of money, goods or other personal property of any value from 
 the person of another or in his presence by violence or by putting such person 
 in fear.  State v. Bland, 318 S.C. 315, 317, 457 S.E.2d 611, 612 (1995) 
 (citations omitted).  It is a felony to commit robbery while armed with a deadly 
 weapon.  See S.C. Code Ann. § 16-11-330(A) (2003).  Attempted armed robbery 
 is also a felony.  S.C. Code Ann. § 16-11-330(B) (2003) (A person who commits 
 attempted armed robbery while armed with a pistol . . . or other deadly weapon, 
 is guilty of a felony . . . .).  Attempted armed robbery is defined as acts 
 towards the commission of a robbery with the intent to commit the robbery, but 
 the act falls short of actual completion.  See State v. Hiott, 
 276 S.C. 72, 80, 276 S.E.2d 163, 167 (1981).  The act towards the commission 
 of the robbery is to be liberally construed, and it is sufficient if the act 
 goes far enough toward accomplishment of the crime to amount to the commencement 
 of its consummation.  State v. Quick, 199 S.C. 256, 259, 19 S.E.2d 101, 
 102 (1942).
This Court has addressed acts sufficient 
 to constitute attempted armed robbery.  In State v. Nesbitt, 346 S.C. 
 226, 550 S.E.2d 864 (Ct. App. 2001), an armed and masked man approached the 
 front door of a convenience store, waiving a gun.  The gunman did not point 
 the gun at anyone, he did not enter the store, and he fled the scene within 
 seconds.  Nesbitt was charged and convicted of attempted armed robbery.  In 
 affirming the trial courts denial of Nesbitts motion for a directed verdict, 
 we addressed the intent requirements of attempt crimes:
Attempt crimes are generally ones of specific intent such 
 that the act constituting the attempt must be done with the intent to commit 
 that particular crime.  State v. Sutton, 340 S.C. 393, 532 S.E.2d 283 
 (2000).  In the context of an attempt crime, specific intent means that the 
 defendant consciously intended the completion of acts comprising the choate 
 offense.  In other words, the completion of such acts is the defendants purpose.  
 Id. at 397, 532 S.E.2d at 285 (citing United States v. Calloway, 
 116 F.3d 1129 (6th Cir.1997)).  Additionally, the State must prove that the 
 defendants specific intent was accompanied by some overt act, beyond mere preparation, 
 in furtherance of the intent, and there must be an actual or present ability 
 to complete the crime.  State v. Evans, 216 S.C. 328, 57 S.E.2d 756 (1950);  
 State v. Quick, 199 S.C. 256, 19 S.E.2d 101 (1942).  The preparation 
 consists in devising or arranging the means or measures necessary for the commission 
 of the crime; the attempt or overt act is the direct movement toward the commission, 
 after the preparations are made.  Quick, 199 S.C. at 260, 19 S.E.2d 
 at 103.
Nesbitt, 346 S.C. at 231, 550 S.E.2d at 866.  
 This Court determined a jury could infer from the evidence that an armed robbery 
 was immediately forthcoming, or that the attempt had begun.  Id. at 
 234, 550 S.E.2d at 868.
Viewing the evidence 
 in this case in the light most favorable to the State, substantial evidence 
 existed that Sumpter had the intent to commit armed robbery.  Sumpter jumped 
 over the counter, pointed a gun at Winningham, and demanded that she get down 
 on the floor.  Although Sumpter fled the scene prior to making a demand for 
 money and any money available was located in another room, the act of pointing 
 the gun at Winningham was an overt act towards completing the crime of armed 
 robbery.  As in Nesbitt, the jury in the present case could infer from 
 the evidence that the gunman was attempting to commit armed robbery.  
Because the intent to commit armed robbery can 
 be inferred from the circumstantial evidence in this case, we find the trial 
 judge did not abuse his discretion in submitting this case to the jury. 
Accordingly, the trial courts decision to deny 
 the motion for a directed verdict is 
 AFFIRMED. 
HEARN, C.J., CONNOR and ANDERSON, 
 JJ., concur.